UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROY SULLIVAN

VERSUS

ATLANTIC PLANT MAINTENANCE

CIVIL ACTION

NO. 23-1450-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss*, (Doc. 25), filed by Defendant Atlantic Plant Maintenance ("Defendant"). Plaintiff Roy Sullivan ("Plaintiff") has responded with a *Memorandum in Opposition to Motion to Dismiss* ("*Pl. Opposition*"), (Doc. 28), and Defendant has filed a *Reply Memorandum in Support of Motion to Dismiss* ("*Def. Reply*"), (Doc. 32).

**I.   BACKGROUND**

At this stage in the pleadings, the Court accepts Plaintiff's well-pleaded allegations. Plaintiff is an African-American man who was formerly employed by Defendant but left this employment following alleged discrimination in September through October of 2021. (Doc. 18 at ¶¶ 2–4, 7.) Plaintiff alleges that while employed by Defendant, he was discriminated against on account of his race. (*Id.* at ¶ 4.) Specifically, Plaintiff alleges that he, as an African-American employee, was subject to disparate treatment compared to Caucasian employees. (*Id.* at ¶¶ 3, 5–6.) He claims first that unlike a white employee, he was not "given additional time to complete computer based training" and was "threatened with termination if he did not complete the training within the specified time period[,]" and second that he was "subjected to write-up for meeting with the computer based trainer at a particular location whereas Caucasian employees were not written-up for meeting the trainer at the same location." (*Id.*) Plaintiff alleges that this created a hostile work environment, forcing him to leave Defendant employer and to file a union grievance against Defendant. (*Id.* at ¶¶ 7–8.) Plaintiff claims that following his filing of this grievance, he was

1

blackballed from further employment by Defendant as a result of a conspiracy by Defendant and Union officers. (*Id.* at ¶ 8–9.) As a result, Plaintiff sues Defendant for conspiracy in violation of 42 U.S.C. §§ 1981 and 1985; for a violation of his First Amendment right to free speech in violation of § 1981; for disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964; and for intentional infliction of emotional distress. (*Id.* at ¶¶ 11–38.)

## II.     PARTIES' ARGUMENTS

Defendant argues that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 25 at 1.) Defendant argues that Plaintiff has failed to sufficiently allege that race was the cause of any of the incidents he complains of, and furthermore that he has failed to allege that his treatment was sufficiently severe or pervasive to state a claim. (Doc. 25-1 at 10–11.) Defendant additionally contends that Plaintiff has failed to adequately allege retaliation, either in the form of being denied employment or work assignments at Defendant. (*Id.* at 11–13.) Defendant maintains that Plaintiff has also not sufficiently alleged facts to claim disparate treatment or conspiracy; that he cannot claim a First Amendment violation against Defendant, a private actor; and that he has not alleged actions that rise to intentional infliction of emotional distress. (Doc. 25-1 at 8, 13–21.)

In response, Plaintiff argues that "[b]ecause of the discrimination complaints filed by Mr. Sullivan, Atlantic retaliated against Mr. Sullivan, conspired with his Union[,] and refused to hire Mr[.] Sullivan for subsequent work assignments." (Doc. 28 at 1.) He further alleges that "because of his race, he was treated differently than a white employee." (*Id.* at 2.) Plaintiff provides affidavits and emails that he claims support his action. (Docs. 30-1, 30-2, 30-3, 30-4, 30-5, 30-6, 30-7, 30-8, 30-9.)

2

Defendant replies that Plaintiff has opposed only the dismissal of his claims for race discrimination and retaliation, not the claims for conspiracy, First Amendment violations, or state law claims. (Doc. 32 at 1.) With respect to the race discrimination and retaliation claims, Defendant argues that Plaintiff has still failed to allege sufficient facts to state a claim for relief. (*Id.* at 1–2.) Specifically, Defendant argues that Plaintiff has failed to allege an adverse employment action, failed to adequately point to race as the basis of any negative treatment, and failed to demonstrate protected activity that would give rise to retaliation. (*Id.* at 3–5.)

### III.  LEGAL STANDARDS

#### A.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, No. 21-10133, 2023 WL 5316716, at *3 (5th Cir. Aug. 18, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

"A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

4

IV.     **ANALYSIS**

   A.     **Plaintiff Has Not Stated a Claim for Discrimination Under Title VII**

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Title VII's prohibition against discrimination extends to protect against either 'a tangible employment action, such as a demotion or denial of promotion, or . . . a hostile or abusive working environment.'" *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 455 (5th Cir. 2024) (citing *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 162 (5th Cir. 2007); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011)). "To establish a discrimination claim under Title VII or § 1981, a plaintiff must prove that he or she was subject to an 'adverse employment action[.]'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)). "[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502–03 (5th Cir. 2023) (citing 42 U.S.C. § 2000e-2(a)(1); *Hishon*, 467 U.S. at 77). While "the statutory phrase, 'terms, conditions, or privileges of employment,' is broad[,]" *id.* at 503, the Fifth Circuit has reiterated that Title VII "does not permit liability for de minimis workplace trifles[,]" *id.* at 505 (citing *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021); *Chambers v. D.C.*, 35 F.4th 870, 883, 890 (D.C. Cir. 2022); *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005)). The Supreme Court recently provided additional guidance as to the required harm threshold, holding that "at least in

5

the context of a forced transfer, 'although an employee must show some harm . . . to prevail in the Title VII suit, she need not show that the injury satisfies a significance test.'" *Smith v. Kendall*, No. 23-50713, 2024 U.S. App. LEXIS 25440 at *12, 2024 WL 4442040 at *5 (5th Cir. Oct. 8, 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024) (holding that the lower court erred in requiring "significant harm")).

### 1. *Disparate Treatment*

"Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "A plaintiff can prove discriminatory motive through either direct or circumstantial evidence." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)). When—as is the case here—"a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework" and "'the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

However, as the Fifth Circuit has repeatedly recognized:

> [T]he Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.* But we have also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a

6

> disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

*Id.* As a result, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Id.* at 767 (citing *Raj*, 714 F.3d at 331 (internal citations omitted); *Pacheco*, 448 F.3d at 787).

Plaintiff has alleged that he is "an African-American" and therefore a member of a protected class. (Doc. 18 at ¶ 3.) However, Plaintiff has not sufficiently alleged an adverse employment action. Plaintiff alleges that the adverse employment actions were (1) "a Caucasian employee being given additional time to complete computer based training whereas [Plaintiff] was denied additional time"; (2) being "threatened with termination if he did not complete the training within the specified time period"; and (3) being "subjected to a write-up for meeting with the computer based trainer at a particular location whereas Caucasian employees were not written-up for meeting the trainer at the same location." (Doc. 18 at ¶¶ 5–6.)

Although Plaintiff's *Complaint* does not elaborate on these allegations, he provides attachments to *Pl. Opposition* with further details. The Court is not required to consider these documents, but in order to fully understand Plaintiff's claims, it does so. *See Brackens*, 829 F. App'x at 23. In the attachments to *Pl. Opposition*, Plaintiff claims that while in a break room, he "was approached by an individual (Frank McKnight) who never identified himself as an APM supervisor and was told that if I didn't have my paperwork (PHQ) completed real soon that he would get rid of me." (Doc. 30-4 at 1.) He further claims that McKnight "also instructed me to have my computer training completed by September 24, 2021, as well or he would get rid of me." (*Id.*) Plaintiff claims that he was "written up for [f]ailure to follow the clerk's instruction: not

7

showing up in the trailer when we were never told to go to the trailer," and that he "was the only one written up[]" by a supervisor named Lisa Mitovitch. (*Id.*) In addition to these instances, Plaintiff objects to McKnight's attitude towards him. Plaintiff claims that on September 28, 2021, McKnight shook another employee's hand and "introduced himself . . . but didn't introduce himself to me." (*Id.*) Plaintiff also alleges that McKnight at one point "leaned back as though he didn't want me near him and gave me a stank face look." (*Id.* at 2.)

Plaintiff alleges that in these respects, he was treated more negatively than white coworkers—primarily, Blake Wright, who he claims was given more time to complete training and treated more cordially. (Doc. 30-4 at 1.)

At no point does Plaintiff allege that he was fired, demoted, passed over for promotion, denied leave, or differently compensated. (*See* Doc. 18; Doc. 30-4.) Instead, he alleges first that he was given deadlines to complete training or face termination. (Doc. 18 at ¶ 5; Doc. 30-4 at 1.) Plaintiff does not allege that any actual negative consequences were attached to this warning. (*See* Doc. 18 at ¶ 5; *see* Doc. 30-4 at 1.) The Fifth Circuit has held that such a reprimand, without more, does not constitute an adverse employment action. *See Melancon v. Lafayette Gen. Med. Ctr., Inc.*, 2023 U.S. App. LEXIS 26998, 2023 WL 6621679, at *3 (5th Cir. Oct. 11, 2023) (citing *Thibodeaux-Woody v. Houston Comm. College*, 593 F. App'x 280, 286 (5th Cir. 2014) (internal citations omitted)).

Even the allegations that Plaintiff included in *Pl. Opposition* rather than his Complaint—that (1) McKnight introduced himself to Wright but not to Plaintiff and (2) McKnight leaned away from Plaintiff and made a negative face, (Doc. 30-4 at 1–2)—still fail to reach the type of adverse actions to which Title VII applies. Indeed, "the Supreme Court has cautioned federal courts not to 'transform Title VII into a general civility code for the American workplace.'" *Hamilton*, 79 F.4th

8

at 505. Greeting two employees in the same manner, or an employee's posture and facial expression, are surely the type of "de minimis workplace trifles" that Title VII cannot govern. *See id.*, 79 F.4th at 505 n.64. Plaintiff has therefore failed to plead facts sufficient to state a claim for a disparate treatment discrimination claim under Title VII.

### 2. *Hostile Work Environment*

In order to plead a hostile work environment, a plaintiff must allege that "(1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024) (quoting *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022)). "To affect a term, condition, or privilege of employment, the race-based harassment must have been 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Slaughter v. Torres*, 592 F. Supp. 3d 515, 528 (M.D. La. 2022) (deGravelles, J.) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Plaintiff does not allege that being written up once had any impact on the terms, conditions, or privileges of his employment. This Court has previously found that "write ups alone do not rise to the level of an adverse employment action." *Moore v. Excel Contrs., LLC*, 2024 U.S. Dist. LEXIS 97907, at *47 (M.D. La. June 3, 2024) (deGravelles, J.) (citing *Melancon v. Lafayette Gen. Med. Ctr., Inc.*, 2023 U.S. App. LEXIS 26998, 2023 WL 6621679, at *3 (5th Cir. Oct. 11, 2023)). Nor does Plaintiff allege any harm or any adverse employment consequences accompanying either the deadline for completing training or the single write-up alleged. (*See* Doc. 30-4; Doc. 18 at ¶ 5,

9

6.) Plaintiff has failed to plead facts sufficient to state a claim for a hostile work environment discrimination claim under Title VII.

Because Plaintiff has not alleged any adverse employment actions, or any actions taken by Defendant that impacted the terms, conditions, or privileges of his employment, he cannot plead either disparate impact or a hostile work environment. Plaintiff has not alleged sufficient facts to state a claim for discrimination pursuant to Title VII. Plaintiff's Title VII claims of disparate treatment and hostile work environment are dismissed due to his failure to state a claim.

### B. Plaintiff Has Stated a Claim for Retaliation Under Title VII

Title VII "forbids an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). Where "a retaliation case is based on circumstantial evidence," courts "apply the *McDonnell Douglas* framework." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under that framework, "[t]o establish Title VII retaliation, [a plaintiff] must show that (1) [he or] she engaged in protected activity, (2) [he or] she suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)).

As with Plaintiff's discrimination claims, Plaintiff need not establish a prima facie case of retaliation to survive the 12(b)(6) motion to dismiss stage. *Id.* (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Instead, a plaintiff "only need[] 'plausibly to allege facts going to the ultimate elements of the claim to survive a motion to dismiss.'" *Id.* (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019)).

Here, Plaintiff does not state the date that he filed his EEOC complaint. (Doc. 18 at ¶ 10.) He does state that he "was given a Right to Sue letter by the EEOC on July[] 10, 2023." (*Id.*) The retaliation that Plaintiff alleges, namely Defendant's refusal to re-hire him, occurred in 2022 and early 2023. (Docs. 30-5, 30-6, 30-7, 30-8.)

However, in addition to his EEOC complaint, Plaintiff alleges that he "complained to his supervisors and Union about the hostile work environment." (Doc. 18 at ¶ 16.) While Plaintiff does not elaborate upon this allegation in his Amended Complaint, he provides documentation with further details. With respect to his complaints to supervisors, Plaintiff has submitted emails between himself and Steve Tillman, a manager at Entergy, (Doc. 30-3), which he alleges was "the entity that employed Atlantic[.]" (Doc. 28 at 1.) These emails, the earliest of which is dated October 11, 2021, pertain to an "ethics concern" filed by Plaintiff. (Doc. 30-3 at 1.) Plaintiff has also provided a letter he wrote to his union representative on October 13, 2021, fully detailing the alleged misconduct and saying "I'm filing or asking the union, David Bond[,] to file a grievance for harassment on my behalf." (Doc. 30-4 at 2.)

Plaintiff alleges that after he filed a union grievance, he was "blackballed" by Defendant. (Doc. 18 at ¶¶ 8–9.) Specifically, Plaintiff alleges that Defendant informed the union "they don't want me to come there to work" on an outage in February 2022, (Doc. 30-5), that Defendant had informed the union that it "refused to hire [Plaintiff] for anymore jobs in the future" around February 2023, following Plaintiff's attempt to work at one of Defendant's plants in January 2023, (Doc. 30-7), and that Plaintiff was "on the no hire list" for Defendant in a text exchange dated

11

March 22 (no year included), (Doc. 30-8). Plaintiff has additionally submitted a letter from Defendant to the union representative dated December 15, 2022, "denying the referral of [Plaintiff] for the upcoming Riverbend Nuclear Project[]" and "requesting he do [sic] not show up for any referrals for any upcoming APM projects." (Doc. 30-6.)

Defendant first argues that "Sullivan has not alleged he was denied employment by APM as a result of complaining about discrimination in the workplace." (Doc. 25-1 at 12.) However, Plaintiff alleges that "[a]s a result of Mr. Sullivan's verbal complaints and written grievances" he was "blackballed" and "denied work assignments." (Doc. 18 at ¶ 25.) He further argues that "[b]ecause of the discrimination complaints filed by Mr. Sullivan, Atlantic retaliated against Mr. Sullivan, conspired with his union and refused to hire Mr. Sullivan for subsequent work assignments." (Doc. 28 at 1.) "Failure to hire is an adverse employment action." *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019) (citing *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997)). Such claims require an allegation that the plaintiff "actually applied for an available position." *Id.* Plaintiff alleges that he did so through his union representatives. (Doc. 18 at ¶¶ 9, 25, 31; Docs. 30-7, 30-8.) Plaintiff has therefore adequately alleged the denial of employment. The Court warns Plaintiff that a prima facie showing of an application of employment requires more at the summary judgment stage. *See Thomas*, 913 F.3d at 463–64.

Defendant further argues that "[a] union grievance concerning discrimination does not constitute protected activity, unless the plaintiff engages in filing the grievance." (Doc. 32 at 4. (citing *Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007).) In *Ramirez*, the Fifth Circuit stated that "this circuit has never squarely determined . . . whether union activities are protected activities under Title VII[,]" but that such a determination was unnecessary in that case. 225 F.

12

App'x at 210.[1] Instead, the Circuit found that in order to claim retaliation, the plaintiff "would need to show that she participated in some manner in filing the Union grievance"—not merely that "the Union did file a grievance[.]" *Id.*

Defendant argues that it is unclear whether Plaintiff ever filed a grievance, claiming that if Plaintiff had done so, he would not have still been inquiring as to why Defendant "no longer wanted to hire him . . . 16 months later[.]" (Doc. 32 at 4–5.) Plaintiff has alleged that he "filed a grievance with his Union against [Defendant]." (Doc. 18 at ¶ 8.) Plaintiff has further submitted a letter to his union representative showing his participation in filing a union grievance, (Doc. 30-4 at 2), and an email in which he states his belief that he filed a union grievance, (Doc. 30-5). Ultimately, this is a factual question better resolved at the summary judgment stage or at trial, with the benefit of discovery.

As the Court previously addressed, in addition to the union grievance, Plaintiff alleges that he complained to his supervisors prior to the refusal to re-hire and that at some point, he filed an EEOC complaint. (Doc. 18 at ¶¶ 10, 16.) While the date of the EEOC complaint is unclear, Plaintiff has sufficiently alleged that he engaged in protected activity and that, as a result, he was not rehired by Defendant. These allegations survive the 12(b)(6) motion to dismiss stage.

C.      **Plaintiff Has Not Stated a Claim Under § 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts[,]" which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–

---

[1] The Fifth Circuit has continued to decline to address whether reporting discrimination to a union representative or filing a union grievance is protected activity. See *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 448 n.1 (5th Cir. 2014) ("We do not address whether Spencer's reporting the text message to a union representative—rather than anyone in Schmidt's management—is sufficient to trigger Title VII's retaliation provision.").

13

(b). "The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)). Plaintiffs attempting to establish a § 1981 claim "must allege that (1) they are members of a racial minority; (2) [d]efendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" *Id.* (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). "To establish a discrimination claim under Title VII or § 1981, a plaintiff must prove that he or she was subject to an 'adverse employment action[.]'" *Thompson*, 764 F.3d at 503 (5th Cir. 2014). "To prevail" in a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020); *accord. Slaughter v. Torres*, No. 18-362-JWD-EWD, 2023 U.S. Dist. LEXIS 43983 at *27 (M.D. La. Mar 14, 2023) (deGravelles, J.).

Plaintiff alleges that Defendant's actions "constitute a continuing violation of Title VII and § 1981." (Doc. 18 at ¶ 38.) As the Court determined above with respect to Plaintiff's Title VII claims, Plaintiff has not alleged any adverse action rising to the level of "making, performance, modification, [or] termination of contracts," nor adversely impacting "the benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. Accordingly, Plaintiff has not pled facts sufficient to state a claim under § 1981. Plaintiff's § 1981 claims are dismissed for failure to state a claim.

### D.    Plaintiff Has Not Stated a Claim for Conspiracy Under § 1985

Section 1985 prohibits conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges

14

and immunities under the laws[.]" 42 U.S.C. § 1985(3). It "imposes liability on 'two or more persons in any State or Territory [who] conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws.'" *Konan v. United States Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024) (quoting 42 U.S.C. § 1985(3)) (alterations in *Konan*). Section 1985 "require[s] that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' undergirds the conspirators' action." *Mandawala v. Northeast Baptist Hosp.*, 16 F.4th 1144, 1155 (5th Cir. 2021) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998)). "'To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States.'" *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (per curiam)).

Plaintiff alleges that "certain officers of the Union conspired with Atlantic to blackball Mr. Sullivan." (Doc. 18 at ¶ 10.) He alleges no further facts demonstrating the existence of this conspiracy, whether the purpose of it was to deprive him of equal protection based on discriminatory racial animus, or any acts in furtherance of the alleged conspiracy. (*See id.*) Even taking into account Plaintiff's attachments to *Pl. Opposition*, Plaintiff states only that the union was informed that Defendant had him on a no hire list or refused to hire him. (*See* Docs. 30-7, 30-8.) This does not further Plaintiff's claim for conspiracy.

While the Court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the Plaintiff, Plaintiff must go beyond mere conclusory allegations. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. Where Plaintiff does not "state any facts

15

to support his conclusional allegations that [Defendant] participated in a conspiracy[,]" pure speculation is "not specific enough to establish a conspiracy." *Jackson*, 959 F.3d at 200. Plaintiff has not pled facts sufficient to state a claim for conspiracy under § 1985 against Defendant. Plaintiff's § 1985 claims are dismissed for failure to state a claim.

E.   **Plaintiff Has Not Stated a First Amendment Claim**

Plaintiff alleges that his First Amendment right to free speech was violated when he was "blackballed by defendant for reporting to the Union[,]" which was "consequently[] a violation of 42 U.S.C. § 1981 by defendant." (Doc. 18 at ¶¶ 31–32.) As Defendant argues, the Free Speech Clause "only applies to state actors." (Doc. 25-1 at 17.) "The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). Granted, "a private entity may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.'" *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)). Here, however, Plaintiff has not alleged that Defendant is either a state actor or acting as one. (*See* Doc. 18.) He therefore cannot state a First Amendment claim against Defendant.

As to his connected § 1981 claim, Plaintiff likewise fails to state a claim against Defendant for his alleged blackballing. Under Fifth Circuit caselaw, "[t]he following elements must be met for a successful § 1981 claim: '(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute.'" *Konan v. United States Postal Serv.*, 96 F.4th 799, 804 (5th Cir. 2024) (quoting *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). Plaintiff has adequately alleged that he is African-American and therefore a member of a racial minority. (Doc. 18 at ¶ 3.) With respect to his claim that he was blackballed, unlike his claim for termination,

16

Plaintiff has adequately alleged an adverse action related to an activity enumerated in the statute. However, Plaintiff has at no point connected his alleged blackballing to his race. Instead, he argues that it is "because he reported to the Union"—thus his attempted First Amendment claim. (Doc. 18 at ¶ 32.) Because Plaintiff has failed to allege that his blackballing was in any way tied to his protected class, he has failed to state a claim for relief under § 1981. Plaintiff's First Amendment and related § 1981 claims are dismissed for failure to state a claim.

### F.  Plaintiff Has Not Stated a Claim for Intentional Infliction of Emotional Distress (IIED)

"To state a cause of action for IIED, a plaintiff must plead the following elements: '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" *Slaughter v. Torres*, 592 F. Supp. 3d at 529 (quoting *Sparks v. Donovan*, 04-388 (La. App. 3d Cir. 10/13/04), 884 So.2d 1276, 1282). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). It "must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* at 1210. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1209.

Plaintiff has not alleged facts that rise above mere insults, indignities, annoyances, or trivialities. In his *Complaint*, he alleges only that he was denied additional time to complete an assignment while another employee was granted additional time, (Doc. 18 at ¶ 5); that he was threatened with termination if he did not complete his required training by the deadline, (*id.*); and

17

that he was "subjected to a write-up for meeting with the computer based trainer at a particular location whereas Caucasian employees were not written up" for the same conduct, (*id.* at ¶ 6). In the attachments to *Pl. Opposition*, Plaintiff also alleges that one of Defendant's employees did not introduce himself to Plaintiff and at one point leaned back from Plaintiff and "gave [him] a stank face look." (Doc. 30-4-1 at 1–2.) None of these allegations, either in the *Complaint* or in *Pl. Opposition*, go beyond mere insults, indignities annoyances, or trivialities to reach the degree of severity required for an allegation of intentional infliction of emotional distress. Plaintiff has failed to plead facts sufficient to state a claim for intentional infliction of emotional distress. Plaintiff's intentional infliction of emotional distress claims are dismissed for failure to state a claim.

## V.     LEAVE TO AMEND

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). *See* Fed. R. Civ. P. 15(a). "[L]eave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Plaintiff has failed to state a claim with respect to his Title VII discrimination claims, his § 1981 and § 1985 claims, his First Amendment claims, and his intentional infliction of emotional distress claims. These claims will be dismissed without prejudice, and Plaintiff will be given leave to amend.

Plaintiff is reminded of his obligation to have a good faith basis in law and fact before amending his petition. *See* Fed. R. Civ. P. 11.

## VI. CONCLUSION

Defendant's *Motion to Dismiss* (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's *Motion to Dismiss* is **GRANTED** with respect to Plaintiff's Title VII discrimination claims, Plaintiff's § 1981 and § 1985 claims, Plaintiff's First Amendment claims, and Plaintiff's intentional infliction of emotional distress claims. Defendant's *Motion to Dismiss* is **DENIED** with respect to Plaintiff's Title VII retaliation claim. Plaintiff's Title VII discrimination claims, his § 1981 and § 1985 claims, his First Amendment claims, and his intentional infliction of emotional distress claims are **DISMISSED WITHOUT PREJUDICE.** Plaintiff is granted leave to amend these claims. Any amendments are due 28 days from this order. Failure to amend will result in dismissal of claims with prejudice. Defendants are instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file any amended complaint.

Signed in Baton Rouge, Louisiana, on February 5, 2025.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**